*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0353P (6th Cir.)
File Name: 00a0353p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JERRY MCMEANS,
  *Petitioner-Appellant,*

   *v.*

ANTHONY J. BRIGANO,
Warden,
  *Respondent-Appellee.*

No. 98-4096

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 97-00054—Sandra S. Beckwith.

Argued: June 21, 2000

Decided and Filed: October 5, 2000

Before: RYAN, SILER, and CLAY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** William R. Gallagher, Cincinnati, Ohio, for Appellant. Stuart W. Harris, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** William R. Gallagher, Cincinnati, Ohio, for Appellant. Todd R. Marti, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

RYAN, J., delivered the opinion of the court, in which SILER, J., joined. CLAY, J. (pp. 22-25), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

RYAN, Circuit Judge.  Before us is the appeal from the district court's order dismissing the *habeas* petition of Jerry McMeans, an Ohio prisoner convicted of raping his stepdaughter.  McMeans asserts that the district court erred when it held that he had procedurally defaulted on his Confrontation Clause, *Brady*, and juror bias claims.  He also argues that the district court erred when it held that the Ohio court "reasonably applied" federal law in deciding that trial counsel rendered constitutionally adequate assistance.  We will affirm.

**I.**

During the latter half of the 1980s, McMeans lived with his wife, Twila, and her children from a previous marriage, Donald Jr., Jerry, Misty, and Wendy.  According to Wendy, one night in the summer of 1987, Wendy's intoxicated mother summoned her upstairs to a bedroom and ordered her to have sexual intercourse with her stepfather, an order Wendy allegedly followed.  Wendy also asserted that after this initial encounter McMeans forced her to have sexual intercourse with him or perform fellatio on him several more times, sometimes for money.  McMeans denies having had any sexual relationship with Wendy.

At some point during this period, Wendy informed her father, Donald Self, of McMeans's alleged sexual misconduct.  Donald contacted Wendy's mother and she allegedly assured him that the problem would not persist.  Wendy later informed Donald that McMeans's alleged misbehavior continued and, soon thereafter, Donald sought the assistance of Franklin County Children Services (FCCS).

At about the same time, Wendy also informed her fifth grade teacher of McMeans's alleged abuse. Wendy's teacher reported Wendy's allegations to FCCS.

After receiving these reports, FCCS took Wendy into its custody. At approximately the same time, McMeans lost his job and was evicted from his home in Columbus, Ohio. He then moved with his wife and the remainder of his adopted family to Wisconsin.

After a Franklin County grand jury charged McMeans with six counts of rape, Ohio authorities eventually located him in Wisconsin and procured his return to face criminal charges.

McMeans alleges that during *voir dire* it became apparent that two prospective jurors would be biased. According to McMeans, juror Hunt was the mother of a rape victim and juror Grey's daughter had been murdered. McMeans also asserts that Grey was friends with the "chief county prosecutor." McMeans claims that, despite his personal objections to these jurors, his trial counsel did not employ unused peremptory challenges to remove Hunt and Grey. There is no record support for McMeans's assertions, however, because his trial counsel waived the right to have *voir dire* proceedings transcribed.

At trial, Wendy testified that McMeans had raped her several times and McMeans denied those charges. The theory of McMeans's defense was that Wendy had fabricated a story of sexual abuse in order that her father would gain physical custody of her. Aside from the testimony of Wendy and McMeans, several other witnesses testified that Wendy had informed them of McMeans's alleged misbehavior.

The only physical evidence presented at trial was the testimony of a doctor from FCCS who had examined Wendy. That doctor testified that Wendy had scarring and "irregularities" on her hymen, which possibly indicated sexual activity.

On the second day of trial, the prosecution gave the trial judge portions of reports from FCCS for *in camera* review. The reports noted that Wendy had accused two other men of sexually assaulting her after the petitioner's alleged abuse. After reviewing the file, the trial judge informed McMeans's counsel of Wendy's subsequent rape accusations, but warned counsel that he did not think such evidence was admissible under Ohio law. The following day, when McMeans's counsel attempted to question Wendy and her father about the subsequent rape accusations, the trial judge ruled that such examination was impermissible under the Ohio rape shield law.

After the trial judge dismissed one of the counts against McMeans, the jury found McMeans guilty of the five remaining counts. The trial judge sentenced McMeans to five life sentences.

McMeans timely appealed his conviction with the assistance of appointed counsel. Counsel argued:

[(1)]   THE TRIAL COURT ERRED IN ADMITTING . . . EVIDENCE . . . OF PRIOR BAD ACTS . . . .

[(2)]   THE TRIAL COURT ERRED BY EXCLUDING EVIDENCE OF PROSECUTRIX'S PRIOR ACCUSATIONS OF RAPE AGAINST OTHERS IN VIOLATION OF APPELLANT'S RIGHT TO A FAIR TRIAL, AND TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

[(3)]   THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO DISMISS [THE CHARGES AGAINST HIM WHICH WERE IMPERMISSIBLY VAGUE].

Petitioner was prejudiced by his counsel's failure to raise the *Brady* violation claim, thereby providing a sufficient basis to excuse his procedural default. *See Coleman,* 501 U.S. at 750.

In addition, if the prior rape allegations were found to have been false, I would find Petitioner's Sixth Amendment right to confront his accuser was violated but for this Court's recent holding in *Boggs v. Collins*, ___F.3d ___, No. 99-3325, 2000 WL 1335377, at *6-*10 (6th Cir. Sept. 18, 2000). In a case such as this, where the physical evidence is far from compelling, and the determination of guilt or innocence turns upon the credibility of the victim and the accused, it is all the more important that a defendant have the right to confront his accuser.

For the foregoing reasons, I would conditionally grant the *habeas* petition by ordering the Petitioner's release unless the State on remand conducts an evidentiary hearing to determine whether the prior rape allegations were actually false. If the rape allegations are proven false, Petitioner's application for the writ should be granted and a new trial ordered.

government, Petitioner was unable to determine the veracity of the victim's allegations. As a result, the trial court refused to allow the prior rape allegations into evidence to impeach the credibility of the victim because under the Ohio Rape Shield Law, the prior rape allegations could not be brought out at trial unless they were false. *See* OHIO REV. CODE ANN. § 2907.02(D). Because Petitioner's appellate counsel was aware of the untimely disclosure by the government and the resulting prejudicial repercussions to Petitioner, it was objectively unreasonable for Petitioner's appellate counsel not to raise a *Brady* claim on direct appeal. Petitioner's appellate counsel thus rendered ineffective assistance of counsel constituting cause to excuse the default. *See Banks v. Reynolds*, 54 F.3d 1508, 1515 (10th Cir. 1995) (holding that appellate counsel who failed to raise a *Brady* claim rendered petitioner ineffective assistance of appellate counsel); *see also Carrier*, 477 U.S. at 486-89.

Turning to the actual prejudice prong of the cause and prejudice standard, it is well established that a prosecution's failure to disclose evidence that is favorable and material to the issue of guilt violates a defendant's right to due process. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). Here, the record does not allow for a determination of whether Petitioner was actually prejudiced by his counsel's failure to raise the *Brady* claim because the record is insufficient to determine whether the prior rape allegations were false. Defense counsel did not request an *in camera* hearing. However, had an *in camera* hearing been requested and had it yielded a finding that the alleged victim's rape allegations against two other men were false, then a *Brady* violation occurred because Petitioner was denied the use of "evidence that [could have been] used to impeach the credibility of a witness[,]" *see Schledwitz v. United States*, 169 F.3d 1003, 1012 (6th Cir. 1999), thus resulting in actual prejudice to Petitioner. Inasmuch as it is not possible to determine the veracity of the victim's prior rape allegations on the record before us, I would remand to the district court with instructions to hold an evidentiary hearing to determine whether the prior rape allegations were in fact false. If so,

[(4)]  APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

After submitting those arguments, McMeans filed a supplemental brief, *pro se*, which asserted, among other claims, that the prosecution failed to comply with the duties recognized by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963). On February 21, 1989, the Ohio Court of Appeals struck McMeans's brief, noting that he had the option of dismissing his appointed counsel and relying upon his *pro se* brief. McMeans did not dismiss his appointed counsel.

The Ohio Court of Appeals affirmed McMeans's conviction on August 23, 1990. As to McMeans's contention that trial counsel should have been allowed to pursue inquiry into Wendy's prior rape accusations, the appellate court stated:

> This court finds that the [Ohio] rape shield law is not applicable to this case since the evidence concerning whether or not Wendy fabricated other rape charges does not address any aspect of her sexual activity. The evidence merely addresses whether or not Wendy is a credible witness. However, before a trial court may admit evidence that the victim had made prior accusations of rape against others, the trial court must be satisfied that the prior accusations were, in fact, false. . . .

> In this case, there is no evidence in the record that Wendy's prior accusations were false. . . . Had appellant wished to proffer evidence of the falsity of the prior accusations, appellant could have availed himself of an in-camera hearing . . . . Since appellant did not, this court cannot find that the trial court abused its discretion in declining to permit appellant's counsel to cross-examine

Wendy on her prior accusations of rape. Accordingly, appellant's second assignment of error is not well-taken.

Regarding McMeans's ineffective assistance claim, the court held that "none of the things appellant asserts as ineffective in and of themselves demonstrates ineffectiveness on the face of the record and, most certainly, do not demonstrate that the result would have been different." McMeans filed a motion for reconsideration of that decision, which the court of appeals denied on November 6, 1990.

McMeans then filed a *pro se* appeal to the Ohio Supreme Court, claiming four errors in his trial including the claim that his rights guaranteed by the Confrontation Clause had been violated. The Ohio Supreme Court declined to hear the appeal.

While his direct appeal was pending, McMeans filed a *pro se* motion for a new trial, arguing ineffective assistance of trial counsel and that the prosecution failed to fulfill its *Brady* obligations. After the Ohio Court of Appeals affirmed his conviction, the trial court rejected McMeans's motion, holding that such motion was untimely and, timing aside, that his arguments had been considered and rejected at the appellate level.

McMeans unsuccessfully appealed the trial court's decision. The Ohio Court of Appeals affirmed, ruling that McMeans's motion was untimely. McMeans then appealed to the Ohio Supreme Court, which declined to exercise its jurisdiction over his appeal.

In November 1991, McMeans filed his first *habeas* petition in federal court, arguing that the prosecution failed to disclose exculpatory evidence and that his Confrontation Clause rights had been violated. While his petition was pending, the Ohio Supreme Court ruled in *State v. Murnahan*, 584 N.E.2d 1204 (Ohio 1992), that an ineffective assistance of appellate counsel claim could be raised in a delayed motion for reconsideration of a direct appeal. Given this ruling, McMeans moved to dismiss his petition without prejudice in

generally demonstrate cause if he can present a substantial reason to excuse the default. *See Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). In *Murray v. Carrier*, the Supreme Court stated that "the existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." 477 U.S. 478, 486-89 (1986). Thus, ineffective assistance of counsel can constitute cause.[1] *See id.*

Petitioner argues that the refusal of his appellate counsel to raise a *Brady* violation on his direct appeal resulted in ineffective assistance of appellate counsel thereby constituting cause for the procedural default. Although tactical choices regarding issues raised on appeal are properly left to the sound professional judgment of counsel, *see United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990), based upon the factual circumstances of this case, and the lack of overwhelming evidence against Petitioner, it was below the objective standard of reasonableness for appellate counsel not to raise a *Brady* violation on Petitioner's direct appeal.

As the record indicates, the two prior allegations of rape did not come to light until after the first day of trial. The victim alleged that she had been raped by her girlfriend's boyfriend in April of 1988 and by a thirty-eight year old man in June of 1988. Due to the untimely disclosure of this evidence by the

---

[1]The Supreme Court recently held that when a petitioner relies upon an ineffectiveness of counsel claim as cause to excuse his procedural default, the ineffectiveness of counsel claim must itself have been exhausted before the state courts in order to comply with the commands of *Murray v. Carrier*, 477 U.S. 478, 489 (1991). *See Edwards v. Carpenter*, ___ U.S. ___, 120 S. Ct. 1587, 1591-92 (2000). In the case at hand, pursuant to Petitioner's *Murnahan* motion, he presented his claim that his appellate counsel grossly erred in failing to raise his *Brady* claim to the trial court; he appealed that decision to the Ohio Court of Appeals; and filed an application for leave to appeal the court of appeals decision to the Ohio Supreme Court, but his application was denied. Therefore, *Carpenter* has been satisfied in that Petitioner exhausted his state court remedies before seeking federal *habeas* relief. *See* 120 S. Ct. at 1592.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

CLAY, Circuit Judge, concurring in part and dissenting in part. I agree with the majority's conclusion that Petitioner procedurally defaulted his juror bias claim and did not demonstrate cause and prejudice to excuse the procedural default. However, I disagree with the majority's conclusion that Petitioner did not "fairly present" his Sixth Amendment claim to the Ohio state courts, as well as with the majority's disposition of Petitioner's *Brady* claim.

Petitioner claims that the prosecution's failure to timely produce evidence of the victim's prior rape allegations violated his Sixth Amendment right to confrontation. The majority concluded that Petitioner did not fairly present his Sixth Amendment claim to the Ohio state courts and as a consequence, waived the claim for federal habeas review. A state prisoner seeking federal habeas relief "fairly presents" the substance of each claim to state courts, as required, by citing applicable provisions of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns. *See* 28 U.S.C. § 2254(b); *Carter v. Bell,* 218 F.3d 581, 606-07 (6th Cir. 2000). Because Petitioner cited the Sixth Amendment in his state court appeal, and because the Ohio Court of Appeals understood that Petitioner was asserting his Sixth Amendment right to confront a witness as evidenced by the language used in its opinion, I believe that Petitioner "fairly presented" his confrontation claim to the Ohio state courts. I therefore believe the majority should have reached the merits of Petitioner's Sixth Amendment claim.

Although the majority is correct in concluding that Petitioner procedurally defaulted on his *Brady* claim, a review of Petitioner's claim is not foreclosed so long as he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A petitioner can

order that he might file a *Murnahan* motion. The district court granted this request.

McMeans then submitted his *Murnahan* motion and argued that his appellate counsel grossly erred in failing to raise his Confrontation Clause, *Brady*, and juror bias claims. The Ohio Court of Appeals ruled, first, that the decision not to raise the juror bias claim was likely "appellate strategy" and the court was not prepared to gainsay that tactical decision. As to McMeans's argument that appellate counsel should have presented a *Brady* claim, that court stated:

> The trial court in this case reviewed the childrens' [sic] services file and disclosed the appropriate information to both parties. It was as a result of this *in camera* inspection that appellant became aware of the information he now asserts was not properly provided to him . . . .

> This court has previously addressed the issue of the prior rape reports and found that the trial court did not err in excluding this evidence from the trial. . . . As a result, this court cannot find that appellate counsel was ineffective in failing to raise the issues appellant now raises as assignments of error in his previous appeal.

Finally, the appellate court ruled that appellate counsel had, in fact, raised a Confrontation Clause claim in McMeans's direct appeal and that claim had been rejected. McMeans appealed that decision to the Ohio Supreme Court which, for a third time, declined to hear his case.

In August 1993, McMeans filed his second federal *habeas* petition. The district court dismissed McMeans's petition without prejudice after the respondent argued that McMeans should be required to seek relief under Ohio's postconviction procedure. When the respondent presented its argument in support of dismissal, it noted that if McMeans chose to file an Ohio postconviction motion, respondent would argue that McMeans had procedurally defaulted on his constitutional claims.

In April 1995, McMeans, acting *pro se*, requested postconviction relief from the Ohio courts. Ohio Rev. Code Ann. § 2953.21. In that motion, McMeans argued that his appointed trial counsel provided constitutionally ineffective assistance by failing to remove the two allegedly biased jurors. The trial court denied McMeans's motion, stating: "[T]rial counsel's decision not to exclude these jurors could have been based upon other favorable answers that these jurors gave. Even barring that, this claim should have been raised on appeal and is now res judicata." The Ohio Court of Appeals affirmed. The Supreme Court of Ohio declined to hear McMeans's appeal.

In March 1996, McMeans, still acting *pro se*, filed a "delayed motion for a new trial based on newly discovered evidence," arguing that Ohio denied him his Sixth Amendment right to be tried by an impartial jury. The trial court denied this motion, ruling that the evidence presented by McMeans did not demonstrate the necessity of a new trial. The Ohio Court of Appeals affirmed.

On January 21, 1997, McMeans, now represented by counsel, filed his third federal *habeas* petition. He argued that juror bias denied him a fair trial, that trial and appellate counsel provided ineffective assistance, that the prosecution failed to turn over exculpatory evidence in a timely manner, and that the limitation on cross-examination of Wendy Self violated rights guaranteed by the Confrontation Clause.

The district court dismissed the petition. That court ruled that McMeans had procedurally defaulted on his *Brady* and juror bias claims. The court then held that McMeans failed to demonstrate ineffective assistance of appellate counsel, which could serve as "cause" to review those claims. As to McMeans's ineffective assistance of trial counsel claim, the district court ruled that "[t]he state court decision rejecting petitioner's claim of ineffective assistance of trial counsel was neither contrary to nor unreasonable in light of clearly established federal law." Finally, the district court ruled that

---

part, credible. We, therefore, fail to see how the seating of two allegedly biased jurors undermines the reliability of the petitioner's conviction. Consequently, we have no jurisdiction to review the petitioner's narrow argument.

### III.

For the foregoing reasons, the order and opinion of the district court are **AFFIRMED**.

### D.

The petitioner argues that he is entitled to *habeas* relief because he was denied the effective assistance of trial counsel. The sole error of trial counsel asserted by the petitioner is counsel's failure to exercise unused peremptory challenges to remove the two allegedly biased jurors. According to the petitioner, this inaction by counsel demonstrates that "counsel's performance fell way below the . . . objective standard of reasonableness." The petitioner also maintains that, because his jury had two allegedly biased members, his conviction cannot be deemed reliable and he has, therefore, established "prejudice" under the *Strickland* standard.

To establish a claim for ineffective assistance of counsel, a defendant must show that his counsel's performance was constitutionally deficient and that counsel's deficient performance was prejudicial. *Strickland*, 466 U.S. at 687. If an alleged error was not "prejudic[ial]," a federal court need not determine whether counsel's performance was constitutionally deficient. *See id.* at 697.

Although the petitioner did raise a claim of ineffective assistance of trial counsel on direct appeal, he did not refer to his trial counsel's decision not to remove the two allegedly biased jurors as an instance of error. He did not refer to this alleged error until he submitted subsequent motions to the Ohio courts. By that time, the Ohio courts held that the issue of the ineffectiveness of trial counsel was *res judicata*. As with the rest of the petitioner's claims, we, therefore, may not review this argument unless the petitioner can demonstrate "cause" and "prejudice" to overcome his procedural default. *See Murray*, 477 U.S. at 485.

The petitioner, however, does not present us with any reason why we should not respect the application of *res judicata* by the Ohio courts. After having thoroughly reviewed the record, we conclude that he cannot establish "prejudice" to excuse his procedural default. The evidence against the petitioner was both substantial and, for the most

McMeans had not "fairly presented" the Confrontation Clause issue to the Ohio courts.

McMeans filed a notice of appeal and a petition for certificate of appealability. This court certified his ineffective assistance of trial counsel, biased juror, *Brady*, and Confrontation Clause claims.

### II.

With each issue presented by the petitioner, the critical question is whether he committed procedural default in the Ohio courts on the claims or the particular arguments he presents. If that is the case, the federal courts do not have jurisdiction, absent a showing of "cause" and "prejudice" to consider those claims. *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

### A.

In his first assignment of error, the petitioner claims he was denied his constitutional right to confront his accuser with her subsequent rape accusations. The district court held that it could not consider the merits of this claim because the petitioner failed to "fairly present" it to the Ohio courts. We hold that the district court did not err.

The federal courts do not have jurisdiction to consider a claim in a *habeas* petition that was not "fairly presented" to the state courts. *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987). A claim may only be considered "fairly presented" if the petitioner asserted both the factual and legal basis for his claim to the state courts. *Id.* at 325. This court has noted four actions a defendant can take which are significant to the determination whether a claim has been "fairly presented": (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of

constitutional law. *See id.* at 326. General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

The petitioner argues that the district court erred because the Ohio Court of Appeals stated that "appellate counsel assigned [the confrontation] issue as error [on direct appeal]" when that court rendered its decision on the *Murnahan* motion. Citing *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), the petitioner contends that, in deciding whether the Ohio courts reached the merits of his federal claim, the federal courts must "look through to the last state court rendering a judgment" on that claim. He asserts that *Ylst* requires us to take the statement in the *Murnahan*-motion opinion literally and hold that the district court erred.

In the alternative, the petitioner argues that, even discounting the *Murnahan*-motion opinion, his direct appeal "fairly presented" that claim. The petitioner maintains that his appellate counsel took most of the actions this court deemed significant to the "fair presentation" analysis in *Franklin*. First, he argues that he presented his Confrontation Clause claim by citing the United States Constitution, "due process," and his right to a "fair trial." Second, he notes that some of the state precedent cited in his appellate brief contained analysis of the Confrontation Clause. Third, he maintains that the preclusion of inquiry into the subsequent rape accusations should have, by itself, alerted the Ohio Court of Appeals to a possible violation of the Confrontation Clause.

The petitioner argues finally that, even if his claim is procedurally defaulted, this court may review the claim on the merits because the ineffective assistance of his appellate counsel was the "cause" of the default. Citing unpublished opinions from this court dealing with examination into prior accusations of rape, the petitioner contends that his Confrontation Clause claim was a "dead bang winner" and his

Through no fault of appellate counsel, no transcript of the *voir dire* proceedings existed because the petitioner's trial counsel waived transcription of that proceeding. We think that the petitioner could have successfully asserted his right to prove actual juror bias only if there was some credible evidence to support an inference of potential bias. The petitioner's appellate counsel, however, had no such evidence. Consequently, we cannot fault his decision not to assert an unsubstantiated claim or quarrel with the Ohio Court of Appeals' decision that the petitioner received constitutionally adequate assistance of appellate counsel. Thus, the petitioner fails to demonstrate adequate "cause" to excuse his procedural default and, therefore, we cannot review his claim.

The doctrine of judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding. *Warda v. Commissioner of Internal Revenue*, 15 F.3d 533, 538 (6th Cir. 1994). In *Russell v. Rolfs*, 893 F.2d 1033 (9th Cir. 1990), the Ninth Circuit applied the doctrine of judicial estoppel to the State of Washington after it had argued that a prisoner needed to pursue an "adequate and available" state postconviction remedy before seeking relief in federal court. *Id.* at 1037. That court ruled that, because of its earlier assertion as to the "availab[ility]" of postconviction relief, the State of Washington could not subsequently argue procedural default in the federal courts. *Id.* at 1038.

We hold that the respondent is not judicially estopped from arguing procedural default. Even if we were inclined to follow the Ninth Circuit's methodology in *Russell*, which we are not, this case is distinguishable. As noted by the respondent, the petitioner did not even raise a juror bias claim in his second *habeas* petition and, therefore, the respondent did not make any misrepresentation that the Ohio courts could or would consider the juror bias claim in a state postconviction proceeding. Thus, there is no inconsistent position to which the respondent must now adhere.

The petitioner argues, in the alternative, that his appellate counsel's failure to assert his juror bias claim on direct appeal is yet another instance of constitutionally inadequate representation, allowing this court to exercise jurisdiction over his claim.

Finally, it is the petitioner's theory that the respondent is judicially estopped from arguing procedural default to this court. According to the petitioner, when the respondent moved to dismiss the petitioner's second *habeas* petition for failure to exhaust his state remedies, the respondent argued that the petitioner had not procedurally defaulted on his juror bias claim. The petitioner contends that, because the respondent made this alleged argument to support its motion to dismiss, it should not be allowed to argue procedural default now.

As to the petitioner's contention that the ineffective assistance of his appellate counsel excuses his procedural default, the respondent argues that "the state courts correctly held that . . . appellate counsel was constitutionally adequate because there were reasonable grounds for not asserting th[at] claim" and this court should defer to that ruling. The respondent also maintains that, even if judicial estoppel should apply in the situation the petitioner describes, the petitioner did not present a juror bias claim in his second *habeas* petition. Therefore, according to the respondent, it could not have made any misrepresentation regarding that particular claim.

Under the Sixth Amendment, a state defendant is entitled to be tried by an impartial jury. *See, e.g., Dennis v. United States*, 339 U.S. 162, 171-72 (1950). A defendant maintaining juror bias must be afforded an opportunity to prove actual bias. *Nevers v. Killinger*, 169 F.3d 352, 373 (6th Cir.), *cert. denied*, 527 U.S. 1004 (1999).

We again hold that the Ohio Court of Appeals' decision that appellate counsel did not commit a *Strickland* error in failing to assert the petitioner's juror bias claim was not "objectively unreasonable." *See Williams*, 120 S. Ct. at 1521.

appointed counsel, therefore, committed a gross error in failing to assert it.

The respondent argues that the statement from the *Murnahan*-motion opinion is, at best, ambiguous and, therefore, this court should look to the substance of the petitioner's direct appeal. The respondent contends that on direct appeal the petitioner argued only that the trial judge erroneously applied the Ohio rape shield law when he limited inquiry into the subsequent rape accusations. The respondent also notes that the petitioner's appellate brief did not cite *any* federal precedent and that most of the state cases cited by the petitioner dealt solely with Ohio evidence law.

As to the petitioner's alternative argument that the ineffective assistance of appellate counsel excuses his procedural default, the respondent contends that appellate counsel made a valid strategic choice in excluding the Confrontation Clause claim.

We are of the opinion that the petitioner did not "fairly present" his claim. In his direct appeal, the petitioner focused entirely on the applicability of Ohio's rape shield law. Ohio Rev. Code Ann. § 2907.02. He did not cite any federal precedent and his appellate brief only alleges that the trial judge's limitation on cross-examination denied him a "fair trial" and "due process." As this court recognized in *Franklin*, this is not sufficient to alert a state court that an appellant is asserting the violation of a specific constitutional right. While it is true that a few of the state cases cited by the petitioner on direct appeal contain references to the Confrontation Clause, the majority of those cases were concerned with Ohio evidence law. We do not think that a few brief references to the Confrontation Clause in isolated cases is enough to put state courts on notice that such a claim had been asserted. Thus, we hold that the petitioner failed to "fairly present" his Confrontation Clause claim to the Ohio courts.

We are not persuaded that, pursuant to *Ylst*, any statements in the *Murnahan*-motion opinion require a different

conclusion. Giving the petitioner the benefit of the doubt, the most we can say is that the Ohio Court of Appeals erred in its *Murnahan* opinion. While we recognize that, in *Ylst*, the Supreme Court stated that "[i]f the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available," *see Ylst*, 501 U.S. at 801, we do not think this statement is an invitation to the federal courts to seize upon mistakes by state courts to review procedurally defaulted claims. We reach this conclusion partly because of the respect federal courts owe to state courts which have a responsibility equivalent to that of the federal courts to guard constitutional rights. *See generally Rose v. Lundy*, 455 U.S. 509, 522 (1982). Thus, we think it is both prudent and accurate to recognize that the statement relied upon by the petitioner in the *Murnahan*-motion opinion is a mistake. Consequently, we hold that the *Murnahan*-motion opinion has no effect on our conclusion that the petitioner did not "fairly present" his claim to the Ohio courts.

We hold next that the alleged error of appellate counsel in failing to raise the petitioner's Confrontation Clause claim does not constitute "cause" to excuse the petitioner's procedural default. In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation. *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983). We note that, en route to reversing an opinion from this court, the Supreme Court has recently reemphasized that "[n]ot just any deficiency in counsel's performance" is sufficient to excuse procedural default; "the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 120 S. Ct. 1587, 1591 (2000).

we hold that the Ohio appellate court's decision was not "contrary to . . . clearly established Federal law." *See id.* at 1519 (emphasis omitted). We are also of the opinion that the Ohio court's application of the *Strickland* standard was not "objectively unreasonable." *See id.* at 1521. The Ohio trial judge disclosed the evidence of the subsequent rape accusations on the second day of trial after *in camera* review of the FCCS file. This action was essentially in compliance with what the Supreme Court has held the United States Constitution requires in cases such as this. *See Ritchie*, 480 U.S. at 59. The petitioner does not direct our attention to any evidence in the record (and we have found none) indicating that he did not have time to use this evidence "effectively." *See Minsky*, 963 F.2d at 875. The Ohio Court of Appeals noted that, after receiving the information in the FCCS reports, "[the petitioner] could have availed himself of an in-camera hearing" had "[he] wished to proffer evidence of the falsity of the [subsequent] accusations." The petitioner, however, took no action to prove to the trial judge that the subsequent rape accusations were false. Thus, the petitioner's *Brady* claim has obvious weaknesses and, therefore, we cannot conclude that his appellate counsel's service fell below that which the Sixth Amendment demands. Consequently, the petitioner fails to show "cause" to excuse his procedural default, and we affirm the district court's holding that the federal courts do not have jurisdiction to review the merits of this claim.

## C.

The petitioner contends that, contrary to the opinion of the district court, the federal courts have *habeas* jurisdiction to review his juror bias claim. In support of that contention, the petitioner reasserts the denial of his alleged constitutional entitlement to submit a *pro se* appellate brief. He also argues again that the Ohio Court of Appeals considered his juror bias claim when it heard his *Murnahan* motion. For reasons already discussed, we reject those arguments.

hold that the petitioner's argument lacks merit and he did procedurally default on his *Brady* claim.

Regarding the petitioner's contention that ineffective assistance of appellate counsel excuses his procedural default, we must defer to the Ohio Court of Appeals' treatment of that question. Pursuant to 28 U.S.C. § 2254(d)(1), federal *habeas* review of legal issues decided in state court is limited to deciding whether the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "[A] state-court decision is contrary to [the Supreme] Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or if "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams v. Taylor*, 120 S. Ct. 1495, 1519 (2000). "[A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1520. The state court's decision cannot be contradicted under the "unreasonable application" prong of section 2254(d)(1) unless that court's decision is "objectively unreasonable." *See id.* at 1521.

The petitioner does not argue that the prosecution failed to disclose exculpatory evidence. Rather, the petitioner maintains that his appellate counsel should have argued that disclosure was untimely. The Ohio Court of Appeals held that appellate counsel's decision not to raise this argument was not an error so gross as to amount to a Sixth Amendment violation. Because this particular case of alleged ineffective assistance of appellate counsel is not "materially indistinguishable from a relevant Supreme Court precedent,"

Contrary to the petitioner's assertions, his Confrontation Clause claim is not a "dead bang winner." The unpublished cases cited by the petitioner, which of course have limited precedential force, *Boggs v. Brigano*, No. 94-4000, 1996 WL 160822 (6th Cir. Apr. 4, 1996), and *Lemmon v. State of Ohio*, No. 92-3284, 1993 WL 15164 (6th Cir. Jan. 22, 1993), do not stand for the proposition that the preclusion of cross-examination into prior rape accusations is a *per se* violation of the Confrontation Clause. Moreover, even if those cases were as strong as petitioner maintains, we note that the petitioner's appellate counsel would not have had the benefit of that precedent when he filed the petitioner's appellate brief in 1990. In fact, when the petitioner filed his direct appeal, there was precedent to the effect that precluding inquiry into unrelated rape accusations does not offend the Confrontation Clause. *See*, *e.g.*, *United States v. Bartlett*, 856 F.2d 1071, 1087-89 (8th Cir. 1988). The petitioner's appellate counsel may well have examined these cases and decided that there were stronger arguments than the Confrontation Clause claim. Thus, while a different lawyer might have done otherwise, the decision of the petitioner's appellate counsel not to assert his Confrontation Clause claim was not unreasonable and affords no basis for us to conclude that he was not functioning as "counsel" in the Sixth Amendment sense. *See Jones*, 463 U.S. at 750-54. Consequently, we are without jurisdiction to review the merits of the petitioner's arguments.

**B.**

The petitioner argues next that the district court erred when it held that he procedurally defaulted on his *Brady* claim. The petitioner presents three purported flaws in the district court's procedural default holding. First, he proposes that there exists a constitutional right to submit a *pro se* appellate brief on direct appeal. It is the petitioner's theory that the denial of this alleged right constitutes "cause" to excuse his procedural default.

Second, the petitioner argues that he implicitly presented his *Brady* claim in his *Murnahan* motion. He asserts that,

when the Ohio Court of Appeals ruled on the substance of his ineffective assistance of appellate counsel claim, that court had to analyze the merits of his *Brady* claim.

Third, the petitioner contends that the ineffective assistance of his appellate counsel establishes "cause" and "prejudice" sufficient to overcome his procedural default. With heavy reliance on *United States v. Minsky*, 963 F.2d 870 (6th Cir. 1992), the petitioner argues that the prosecution is required to disclose exculpatory evidence in a fashion timely enough to allow defense investigation into the substance of those accusations. According to the petitioner, the disclosure of the subsequent rape accusations on the second day of trial was plainly untimely and it was a gross error for his counsel not to assert such an allegedly obvious claim.

The respondent maintains that the presentation of the *Brady* claim in the *pro se* appellate brief does not excuse the petitioner's procedural default. According to the respondent, the Ohio Court of Appeals gave the petitioner the option of dismissing his appellate counsel and relying on the claims presented in his brief, an option the petitioner "made the considered decision" not to exercise.

The respondent argues next that McMeans presented only an ineffective assistance of appellate counsel claim in his *Murnahan* motion. Citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971), the respondent argues that asserting one constitutional claim that shares a common factual predicate with another is not a sufficient presentation of the latter to excuse a previous procedural default.

Finally, the respondent contends that in cases such as this a state complies with its duty to disclose exculpatory evidence if the trial judge reviews a confidential file *in camera* and discloses any exculpatory evidence therein at some point during the trial. According to the respondent, the trial judge did just that at the petitioner's trial and, therefore, the petitioner's appellate counsel made the reasonable choice not to present a "feckless" claim on direct appeal.

In state criminal proceedings, the prosecution is obligated under the Due Process Clause of the Fourteenth Amendment to disclose evidence that is favorable to the accused and "'material . . . to guilt or . . . punishment.'" *United States v. Bagley*, 473 U.S. 667, 674 (1985) (citation omitted). Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682. Where a state protects the confidentiality of records prepared by child protection agencies, as does the State of Ohio, the Supreme Court has held that defense counsel has no right to inspect those records. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). Instead, it is sufficient for the trial judge to inspect the records *in camera* and disclose any exculpatory evidence contained therein. *Id.* at 60. Generally, exculpatory evidence must be produced by the prosecution "in time for effective use at trial." *Minsky*, 963 F.2d at 875.

The Supreme Court has held that a defendant has no constitutional right to represent himself on direct appeal. *Martinez v. Court of Appeal of California*, 120 S. Ct. 684, 692 (2000). Clearly, this holding contradicts the petitioner's assertion that there exists a constitutional entitlement to submit a *pro se* appellate brief on direct appeal in addition to the brief submitted by appointed counsel. Thus, we reject the petitioner's argument that the Ohio Court of Appeals' decision to strike his *pro se* brief constitutes "cause" to excuse his procedural default.

We are also not persuaded by the petitioner's argument that the Ohio Court of Appeals considered the merits of his *Brady* claim when it heard his *Murnahan* motion. It cannot be the case that, by merely asserting several alleged constitutional violations which appellate counsel failed to raise to a state court, the federal courts have *habeas* jurisdiction to consider the merits of each alleged error. If that were the case, the requirement that a *habeas* petitioner "fairly present" his constitutional claims to the state courts would be meaningless. *See Franklin*, 811 F.2d at 325. We, therefore,