NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0553n.06

No. 11-6480

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jun 07, 2013*
DEBORAH S. HUNT, Clerk

DOUGLAS MARSHALL MATHIS, )
)
    Petitioner-Appellant, )
)
v. )
) ON APPEAL FROM THE
ROLAND COLSON, Warden, ) UNITED STATES DISTRICT
) COURT FOR THE MIDDLE
    Respondent-Appellee. ) DISTRICT OF TENNESSEE
)

BEFORE:  SUTTON and GRIFFIN, Circuit Judges; and WELLS, District Judge.[*]

WELLS, District Judge.  The petitioner Douglas Marshall Mathis appeals the district court's

decision dismissing his habeas petition. For the reasons that follow, the district court's decision is

affirmed.

**BACKGROUND**

On May 1, 1999, Selwyn Ward and his wife, Kim Ward, were camping in Houston County,

Tennessee with their three children. (R.E. 26-4, hereinafter "Transcript," at 153-55). That evening,

while Mr. and Mrs. Ward were relaxing around the campfire and the children were sleeping in the

tent, the petitioner Douglas Marshall Mathis (hereinafter "the petitioner") and his brother Jeff Mathis

unexpectedly drove up to the Ward campsite. (Transcript at 160-61). The Wards knew of the

---

[*]The Honorable Lesley Wells, Senior United States District Judge for the Northern District
of Ohio, sitting by designation.

petitioner, having met him on one other occasion, and, earlier in the week, it had come to their attention that his brother, Jeff Mathis, may have sold Valium to one of the Wards' children. (Transcript 148-49, 150).

The petitioner announced his arrival, and Mr. Ward sat up in his chair and addressed him: "Your brother Jeff, he's the one that sold my sixteen year old son narcotics." (Transcript at 162). After informing Mr. Ward that he was "making a mistake," the petitioner shot him in the face with a sawed-off shotgun, killing him. (Transcript at 162-63). Mr. Ward was unarmed. (Transcript 173-74). The Mathis brothers drove away, and the petitioner later disposed of the weapon by throwing it in the river. (Transcript at 404-05). Early the next morning, the petitioner turned himself in to authorities and admitted that he shot Mr. Ward. (Transcript at 97, 377-78; R.E. 26-5 at 104-06).

In July 1999, a Tennessee grand jury indicted the petitioner for second-degree murder. (R.E. 26-3 at 41). A superseding indictment followed in November, charging him in alternative counts of first-degree premeditated murder and second-degree murder. (R.E. 26-3 at 42). In exchange for a guilty plea to second-degree murder, the state agreed to withdraw the first-degree murder charge. (R.E. 26-3 at 13). After the petitioner's plea was entered, the court imposed a sentence of fifteen-years incarceration. (R.E. 26-3 at 14).

About a year into his term, the petitioner sought to vacate his conviction, without the assistance of counsel and without opposition from the state. (R.E. 26-3 at 17-37, 45-51). A hearing was held on July 9, 2001. When questioned by the court, the petitioner expressed his understanding that he would be tried by jury on the charge of first-degree murder if his petition to vacate were

granted. (R.E. 26-2 at 4-8). The state court vacated the petitioner's second-degree murder conviction and ordered that he stand trial. (R.E. 26-2 at 7; R.E. 26-3 at 52, 55). On March 15, 2002, after a four day trial, a jury convicted the petitioner of first-degree premeditated murder, and he was sentenced to life imprisonment. (R.E. 26-3 at 75-76).

On April 30, 2003, the petitioner filed a direct appeal to the Tennessee Court of Criminal Appeals, arguing that the evidence was insufficient to support a finding of premeditation and that the trial court erred when it instructed the jury. (R.E. 26-7 at 8-10). The petitioner also maintained that he was deprived of a fair trial when the jurors allegedly interacted with the victim's children; when jurors viewed a shotgun for demonstrative purposes; when prosecutors argued that the demonstrative shotgun was the actual weapon used in the crime; when the trial court used the term "murder weapon"; and when the prosecutors made a number of allegedly inflammatory statements during closing arguments. (R.E. 26-7 at 11-13).

The court of appeals initially concluded that a new trial was warranted based on its determination that the state engaged in improper argument in its closing statement, (R.E. 36-9), but, on the state's motion for rehearing, the court reconsidered its decision and reversed itself, with one judge dissenting. The court ultimately held that the petitioner had waived his challenge to the prosecutor's allegedly improper statements by failing to raise contemporaneous objections at trial. *See State v. Mathis*, 2004 WL 392710, at *9 (Tenn Crim. App. March 3, 2004). It further concluded that he did not demonstrate plain error in relation to the prosecutors' statements. *Id.* The court rejected the petitioner's various other arguments and affirmed his conviction. *Id.* at *4-7, *9-10. The

petitioner applied for a discretionary appeal to the Tennessee Supreme Court, but he was denied. (R.E. 26-13).

On June 16, 2005, the petitioner filed for post-conviction relief in the court where he was convicted, pursuant to Tenn. Code Ann. §§ 40-30-101. (R.E. 26-5 at 6-82). On November 6, 2006, the court denied his claims for relief. (R.E. 26-5 at 143-189). The petitioner appealed this decision to the Tennessee Court of Criminal Appeals, arguing that he was prosecuted for first-degree murder without an indictment; that his trial counsel was ineffective to his prejudice; that he was denied a fair and impartial jury; and that he was denied his right to confront two trial witnesses. (R.E. 27 at 4). On April 25, 2008, the Tennessee Court of Criminal Appeals rejected these claims. *Mathis v. State*, 2008 WL 1850800 (Tenn. Crim. App. April 25, 2008). On October 27, 2008, the petitioner's application for a discretionary appeal to the Tennessee Supreme Court was denied. (R.E. 26-18).

On January 12, 2009, the petitioner filed a pro se petition for federal habeas relief in the United States District Court for the Middle District of Tennessee. (R.E. 1). On December 2, 2011, the district court denied the petitioner's claims for relief, and granted a certificate of appealability on the petitioner's non-defaulted claims. (R.E. 44). While the case was pending in district court, the petitioner was also denied habeas relief in state court. *Mathis v. State*, 2011 WL 300143 (Tenn. Crim. App. January 19, 2011).

The petitioner filed this appeal on December 6, 2011. He seeks habeas relief on five grounds: that principles of double jeopardy and due process were violated when he was tried by jury after his initial conviction was vacated; that he was denied a fair trial because of the prosecutor's improper

comments during the state's closing statement; that the evidence was insufficient to convict him; that

he was denied an impartial jury; and that his trial counsel was ineffective.

## STANDARD OF REVIEW

In habeas proceedings, a district court's legal conclusions are reviewed de novo. *Harris v.

Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008). Factual findings are reviewed for clear error. *Id.*

"Where the district court does not make independent factual findings, the factual findings are

reviewed de novo." *Carter v. Mitchell*, 443 F.3d 517, 524 (6th Cir. 2006).

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996,

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Under the 'unreasonable

application' clause, a federal habeas court may grant the writ if the state court identifies the correct

governing legal principle from [the Supreme] Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case." *Id.* at 413. "[M]ixed question[s] of law and fact are reviewed under the 'unreasonable application' prong. . . ." *Biros v. Bagley*, 422 F.3d 379, 386 (6th Cir. 2005)."Factual findings made by the state court, or by state appellate courts based upon the trial record, are presumed to be correct but may be rebutted by clear and convincing evidence." *Id.*

## DISCUSSION

### A. Double Jeopardy and Due Process

The petitioner contends that the state violated his rights under the Double Jeopardy and Due Process clauses of the United States Constitution, when he was tried for first-degree murder after his conviction for second-degree murder was vacated. (Pet. Brief, pp. 20-25).

The district court considered this claim and rejected it on the merits. (R.E. 44 at 9-11). Upon review of the state court record, we conclude that the district court should not have reached the merits, because the petitioner did not fairly present this claim to the state courts. Ordinarily, federal review is proper only after a habeas petitioner has properly exhausted his state court remedies, by fairly presenting each claim to the highest court of the state where he was convicted. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). This rule is grounded in principles of comity, which seek to "reduce [ ] friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A question of exhaustion may be raised sua sponte. *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004).

"A claim may only be considered 'fairly presented' if the petitioner asserted both the factual and legal basis for his claim to the state courts." *McMeans v. Brigand*, 228 F.3d. 674, 681 (6th Cir. 2000). To determine whether a claim has been fairly presented to the state courts, we consider whether the petitioner

> reli[ed] upon federal cases employing constitutional analysis; (2) reli[ed] upon state cases employing federal constitutional analysis; (3) phras[ed] the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleg[ed] facts well within the mainstream of constitutional law.

*Id.*

In light of these factors, the petitioner did not advance the instant double jeopardy or due process claims at any stage of the state court proceedings. On direct appeal, the only claimed errors related to the sufficiency of the evidence, the jury instructions, and the fairness of trial. (R.E. 26-7 at 5; R.E. 26-13). In the subsequent post-conviction action, the petitioner challenged the validity of the indictment under state law, and he did not state an argument in recognizable double jeopardy or due process terms. (R.E. 27 at 12-13). His post-conviction challenge relied exclusively on state law, and none of the cases the petitioner cited involved the application of federal constitutional law. At no point were the state courts called upon to answer the federal constitutional questions that the petitioner now poses.

The consequence of failing to fairly present the claim at the state level depends on whether the petitioner has any state remedies remaining. Where a remedy still exists, "a petition containing at least one issue which was not presented to the state courts must be dismissed for failure to comply

with the total exhaustion rule." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982)). However, "[i]f no remedy exists, and the substance of the claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in state courts." *Id.*

In this instance, the petitioner's case has seen a full course of criminal appeals in the state system, including direct appeals, post-conviction proceedings, and state habeas proceedings. Neither party makes the case that any further state court remedy exists. As a result, and because the petitioner does not argue cause and prejudice, we conclude that the petitioner has procedurally defaulted on his due process and double jeopardy claim.

### B. Fair Trial

Next, the petitioner maintains that he did not have a fair trial because of comments made by the prosecutor in closing arguments. The petitioner says that during closing statements the prosecutor impermissibly expressed his personal belief as to the truth or falsity of the testimony, inflamed the passions or prejudices of the jury, diverted the attention of the jury from its duty to decide the case on the evidence by injecting broader issues, and referred to facts outside the record. (Pet. Brief, pp. 25-28).

The district court rejected this claim on the merits. We conclude that it should not have done so, because the state court's rejection of these claims on procedural grounds bars federal habeas review. At trial, counsel for the petitioner failed to lodge contemporaneous objections to the

challenged statements. On direct appeal, the Tennessee Court of Criminal Appeals stated that typically such "omissions result in a waiver on appeal of any complaint concerning the prosecutor's comments." *Mathis*, 2004 WL 392710, at *7. The court reviewed the propriety of the comments under a plain error standard and ultimately concluded that the claim was waived. *Id.* at *9.

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' " *Beard v. Kindler*, 558 U.S. 53, 53 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 131 S.Ct. 1120, 1127 (2011) (citing *Wainwright v. Sykes*, 433 U.S. 72, 81–82, 90 (1977)). An "adequate" procedural ground is a state rule that is "firmly established and regularly followed." *Id.*

We have previously recognized the adequacy of Tennessee's contemporaneous objection rule. *See Butler v. Rose*, 686 F.2d 1163, 1168 (6th Cir. 1982) ("failure of a petitioner to observe a state contemporaneous objection rule may preclude consideration of a particular claim in a habeas corpus proceeding"). A review of Tennessee case law indicates that this rule is "firmly established and regularly followed." *See, e.g., State v. Thornton*, 10 S.W.3d 229, 234 (Tenn. Crim. App.1999); *State v. Green*, 947 S.W.2d 186, 188 (Tenn. Crim. App.1997); *State v. Little*, 854 S.W.2d 643, 651 (Tenn. Crim. App.1992). As a consequence, the petitioner's failure to adhere to the rule acts as a procedural bar in this instance. Further, the fact that the Tennessee Court of Criminal Appeals alternatively engaged in a plain error review does not change the analysis, because "plain error

review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *see also Scott v. Mitchell*, 209 F.3d 854, 877 (6th Cir. 2000) ("It is enough that the court specifically held that the claims were waived; the court's alternative holding that there was no plain error does not require us to disregard the state court's finding of procedural bar").

A procedural bar can be lifted with a showing of cause for the default and prejudice. *See Rust*, 17 F.3d at 160. In this instance, the petitioner presents no such arguments. Therefore, this claim is procedurally defaulted.

### C.  Sufficiency of the Evidence

The petitioner next challenges the sufficiency of the evidence to support his criminal conviction for first-degree murder. He contends that the evidence, when viewed in a light most favorable to the prosecution, does not support a finding of the element of premeditation beyond a reasonable doubt. We disagree.

In a sufficiency of the evidence challenge, we are bound by two layers of deference. First, we must view the evidence in the light most favorable to the prosecution, and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not "weigh the evidence, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). Second, "even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer

to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009); *See* 28 U.S.C. § 2254(d)(2)..

In Tennessee, first-degree murder is "[a] premeditated and intentional killing of another." Tenn Code Ann. § 39-13-202(West). The statute provides that

> "premeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Tenn. Code Ann. § 39-13-202 (West). "The presence of premeditation is a question of fact for the jury to determine based upon a consideration of all the evidence." *State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000). Premeditation may be inferred from the following circumstances: "use of a deadly weapon on an unarmed individual; the particular cruelty of the killing; the defendant's threats or declarations of intent to kill; the defendant's procurement of a weapon; making preparations to conceal the crime before the crime is committed; destruction or secretion of evidence of the killing; and a defendant's calmness immediately after the killing." *State v. Thacker*, 164 S.W.3d 208, 222 (Tenn. 2005).

Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the element of premeditation beyond a reasonable doubt. There is evidence on record that the petitioner used a deadly weapon on an unarmed victim. Both Mrs. Ward and the petitioner's brother Jeff testified that the petitioner shot Mr. Ward in the face with a shotgun,

following an exchange of words. (Transcript at 162-164). During an interview with authorities, the petitioner admitted that he shot Mr. Ward. (Transcript at 383; R.E. 26-5 at 104-06). Although he initially alleged that the victim held a gun, he later changed his story and admitted that he did not. (Transcript at 103). There are numerous accounts that no weapons were present at the campsite before or after the shooting, and Mrs. Ward testified that Mr. Ward was unarmed when the shooting occurred. (Transcript at 53-57, 75, 173-74, 240, 247, 265).

The unprovoked killing was marked by a particular cruelty and senselessness. Mr. Ward was seated in a lounge chair enjoying a quiet evening with his wife, when he received a shotgun blast to the face. (Transcript 162-63).

The petitioner stated an intent to kill. His brother testified that immediately after the shooting the petitioner struggled to remove the spent shell so that he could reload. (Transcript at 325). The petitioner stated that he would have killed Jeff Mathis and Mrs. Ward as well, if his gun had not malfunctioned. (Transcript at 325). A juror could reasonably infer based on his expressed desire to kill immediately after the shooting, that he intended to kill Mr. Ward.

Further, as revealed in his initial statement to police, the petitioner's actions just prior to the killing reflect coolness and deliberation: "I reached under the seat pulling out my 12 gauge shotgun and loaded it with one 6 shot shell. I layed [sic] the gun across the driver's door and fired it toward his direction." (R.E. 26-5 at 104-06). In addition, a juror could reasonably infer from the events leading up to the encounter that the petitioner was purposeful in his decision to approach the campsite. While parked on the nearby Magnolia bridge, the petitioner ordered his brother to drive

down to the campsite. When Jeff Mathis refused, the petitioner said, "if you don't do what I'm going to do, I'm going to knock your brains in." (Transcript at 321).

The evidence also shows that the petitioner took steps to conceal the crime after the fact. He informed authorities that shortly after the killing he stood on a bridge and threw the gun into the river. (Transcript at 404).

Based on this evidence, when viewed in a light most favorable to the prosecution, a rational juror could have found that the petitioner committed the killing after "the exercise of reflection and judgment," beyond a reasonable doubt. Therefore, the state court of appeals was not unreasonable in concluding that the evidence sufficiently supported the element of premeditation.

### D. Denial of Impartial Jury

The petitioner maintains that he was denied an impartial jury, because (1) the jurors interacted with the victim's children during the trial; (2) the trial judge impermissibly referred to a piece of demonstrative evidence as the "murder weapon" in front of the jury to the prejudice of the petitioner; and (3) one of the jurors had previously been victimized by the petitioner's brother Jeff Mathis. We address, and reject, each argument in turn.

First, the question as to whether jurors impermissibly interacted with the victim's children in violation of the federal constitution is procedurally defaulted. On direct appeal, the Tennessee Court of Criminal Appeals concluded that its consideration of the claim was waived, because the petitioner "failed to support [the] issue with argument or citation to authorities." *Mathis*, 2004 WL 392710, at *9. The court relied on Tennessee Court of Criminal Appeals Rule 10, which states that

"[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. R. Crim. App. R. 10(b). The court further noted that the petitioner was not entitled to relief, because "there is absolutely no evidence that the jury was made aware that the children were those of the victim or that the jury interacted with the children at any time." *Mathis*, 2004 WL 392710, at \*9.

The state court's disposition of this claim on these grounds bars our review, because the decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *See Beard*, 558 U.S. at 53. We have previously recognized that Rule 10 of Tennessee's criminal rules is a "firmly established and regularly followed" rule, and therefore "adequate." *See Middlebrooks v. Bell*, 619 F.3d 526, 535-36 (6th Cir. 2010) (judgment vacated on other grounds). The petitioner provides no arguments to the contrary. Moreover, the petitioner does not argue cause and prejudice for his failure to meet the state procedural rule. As a consequence, the claim is procedurally defaulted.

Next, the petitioner maintains that he was denied an impartial jury, because the trial judge referred to a shotgun introduced into evidence for demonstrative purposes as the "murder weapon." Petitioner's counsel objected at trial, and the proceedings were suspended. Upon resuming, the judge issued a curative instruction:

> Ladies and gentlemen, I'm reminded that I misspoke. I said murder weapon. We don't know if it's a murder until you say it is. That this was the weapon used in the crime.
>
> Obviously, whether it's a - whether it's a murder weapon or not depends upon what your verdict is. And the fact that I inadvertently used that term shouldn't influence anyone.

-14-

> That - Is that a problem? Most of you don't listen to what I say, anyway, so you don't have a problem with that?

R.E. 26-4, p. 356.

The Tennessee Court of Criminal Appeals considered the petitioner's claim on direct appeal and concluded that it had no merit. The court reasoned that because it is presumed that a jury will follow a curative instruction, any error on the part of the judge was harmless. *Mathis*, 2004 WL 392710, at *10 (citing *State v. Smith*, 893 S.W.2d 908, 914 (Tenn. 1994)).

The question for our review is whether the state court's conclusion is contrary to, or an unreasonable application of, established Supreme Court precedent. *See* 28 U.S.C. § 2254(d). The federal courts, similar to Tennessee courts, operate on the presumption "that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *Francis v. Franklin*, 471 U.S. 307, 324 n. 9 (1985). The state court's ruling is consistent with federal law relating to curative instructions to a jury. Furthermore, the United States Supreme Court has pointed out that "[a] defendant is entitled to a fair trial but not a perfect one." *Bruton v. United States*, 391 U.S. 123 (1968) (quoting *Lutwak v. United States*, 344 U.S. 604, 619 (1953)). "[U]nless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." *Schneble v. Florida*, 405 U.S. 427, 432 (1972). In the absence of any facts or argument indicating otherwise, it is presumed that the curative instruction was adequate. The state court's conclusion is neither contrary to, nor an unreasonable application of, established Supreme Court precedent.

The petitioner alleges jury prejudice based on a juror's prior interaction with the petitioner's brother Jeff Mathis. The district court concluded that the petitioner had procedurally defaulted on this claim. (R.E. 44-1 at 27). The certificate of appealability in this instance was granted only as to the petitioner's non-defaulted claims. (R.E. 45). Therefore, because this claim falls outside the scope of the certificate of appealability, we decline to consider it.

### E. Ineffective Assistance of Counsel

The petitioner maintains that his trial counsel was ineffective. He correctly states the standard for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), but his argument on this point merely states a conclusion. He maintains that "[t]rial counsel failed to object to improper comments made by State's counsel in their closing argument," and "[a]s indicated above, if counsel had done so, there is a reasonable probability that the result would have been different." (Pet. Brief at 35). He states a similar conclusory argument with respect to trial counsel's failure to move for a mistrial.

The petitioner has waived his right to appellate review of this claim. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir.1995)). The petitioner's superficial treatment of this issue provides insufficient basis for meaningful appellate review. As a consequence, this claim is waived.

**CONCLUSION**

For the reasons stated above, the district court's decision is affirmed.