**Darrell JOHNSON, Petitioner–Appellant,**

v.

**Jeffrey A. WOLFE, Warden, Respondent–Appellee.**

No. 00–4509.

United States Court of Appeals, Sixth Circuit.

Aug. 13, 2002.

Before BATCHELDER and CLAY, Circuit Judges; ALDRICH, District Judge.*

CLAY, Circuit Judge.

Petitioner, Darrell Johnson, appeals from the district court's order denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, following Petitioner's Ohio state court conviction for two counts of involuntary manslaughter. Petitioner seeks the writ based on his claims that he was denied his Sixth Amendment rights to the effective assistance of counsel and to confront and cross-examine adverse witnesses. For the reasons set forth below, we **AFFIRM** the district court's order denying Petitioner's application for the writ.

## BACKGROUND

### Procedural History

On November 20, 1992, a Ross County, Ohio, grand jury returned a four-count indictment against Petitioner. Counts One and Two of the indictment charged Petitioner with involuntary manslaughter pursuant to Ohio Rev.Code Ann. § 2903.04. Counts Three and Four charged Petitioner with endangering a child, Brittany Rapp, pursuant to Ohio Rev.Code Ann. § 2919.22. Petitioner entered a plea of not guilty to all charges, and proceeded to a jury trial on January 10, 1994. Four days later, the jury returned guilty verdicts on all four counts of the indictment. The trial

---

* Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

court subsequently sentenced Petitioner to a term of ten-to-twenty-five years' imprisonment on Count Two, and to a term of one year's imprisonment each on Counts Three and Four, to run concurrently to one another but consecutively to the sentence on Count Two. The trial court found that Count One charged an "allied offense of similar import" to Count Two, and did not impose sentence on Count One.

Petitioner filed a timely appeal of his conviction and sentence to the Ohio Court of Appeals. Among Petitioner's various assignments of error brought before the Ohio appellate court, two are germane to this Court's review. In his fourth assignment of error, Petitioner challenged, as contravening the Confrontation Clauses of the United States and Ohio Constitutions, the trial court's allowing witness Shirley Bobo ("Bobo") to testify pursuant to the "excited utterance" or "spontaneous declaration" exception to the rule against hearsay. In his ninth assignment of error, Petitioner challenged, as a deprivation of procedural and substantive due process and a violation of the Confrontation Clauses of the United States and Ohio Constitutions, the trial court's refusal to permit Petitioner to call child declarant Stephanie Rapp ("Stephanie") in rebuttal to Bobo's testimony. In an opinion issued October 26, 1995, the Ohio appellate court rejected all of Petitioner's claims and affirmed the conviction and sentence.

Petitioner sought review in the Ohio Supreme Court, advancing one proposition of law: "The State of Ohio must comply with the Confrontation Clause of Section Ten, Article One of the Ohio Constitution and may not shift the burden of proof to the defense." (J.A. at 306, 312.) On July 3, 1996, the Ohio Supreme Court denied Petitioner's request for leave to appeal as not involving any substantial constitutional question. The supreme court also denied Petitioner's subsequent request for reconsideration.

On September 20, 1996, Petitioner, represented by the same counsel who had represented him at trial and on appeal, filed a petition for post-conviction relief, pursuant to Ohio Rev.Code Ann. § 2953.21, in the trial court. Petitioner claimed that he had received ineffective assistance of counsel at trial, and that the trial court denied him the right to confront witnesses and due process by barring him from calling Stephanie as a rebuttal witness. The trial court appointed another attorney to represent Petitioner during the post-conviction proceedings, and convened a hearing on November 21, 1997, at which Petitioner's trial counsel testified. On December 24, 1997, the trial court issued its decision rejecting Petitioner's ineffective assistance of counsel claim and dismissing the petition for post-conviction relief.

Petitioner, represented once again by his counsel at trial and on direct appeal, filed a timely appeal of the dismissal of his post-conviction action, challenging the trial court's rejection of his ineffective assistance of counsel claim. On October 22, 1998, the Ohio Court of Appeals affirmed, determining that counsel's trial performance was not deficient, and that it could not reexamine whether Petitioner suffered prejudice as a result of trial representation because the court had addressed the basis for Petitioner's claim of prejudice in the direct appeal. Petitioner sought review of the appellate court's decision in the Ohio Supreme Court; however, on March 17, 1999, the high court declined jurisdiction and dismissed the appeal.

On November 15, 1999, Petitioner, represented by new counsel, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the district court. The petition asserts three claims for relief. First, Petitioner claims that the

trial court violated his Sixth Amendment right to confront and cross-examine witnesses by admitting hearsay testimony from Bobo. Second, Petitioner claims that the trial court violated his right to present a defense under the Fifth and Sixth Amendments by barring Petitioner from presenting declarant Stephanie's testimony in rebuttal to Bobo's testimony. Third, Petitioner claims that he received ineffective assistance of trial counsel because his attorney failed to include Stephanie's name on reciprocal discovery and failed to object to Bobo's hearsay testimony on grounds of Stephanie's availability to testify. On October 20, 2000, the district court denied the petition.

On November 17, 2000, prior to issuance of a certificate of appealability, Petitioner filed a notice of appeal to this Court. The district court granted Petitioner a certificate of appealability on January 9, 2001, with regard to all three claims raised in the petition for habeas relief.

### Facts

The facts as set forth by the Ohio Court of Appeals are as follows:

> On November 20, 1992, the Ross County Grand Jury indicted [Petitioner] on two counts of involuntary manslaughter and two counts of child endangering in the death of Brittany Rapp, the three year old daughter of his girlfriend, Karen Rapp ("Rapp"). Prior to Johnson's indictment, a jury found Rapp guilty of involuntary manslaughter.

> At [Petitioner's] trial, the state presented evidence that Rapp, her seven year old daughter Stephanie, and Brittany moved in with [Petitioner] in November 1991. Witnesses testified that shortly after that, many bruises began appearing on Brittany. On February 14, 1992, the Washington County Emergency Medical Team ("EMT") respond-

ed to a dispatch to [Petitioner's] home. The EMT found Brittany in the living room in cardiac arrest. [Petitioner] told the EMT that he walked into the bedroom and saw Brittany fall from the headboard. The EMT transported Brittany to the Ross County Medical Center, where she died of a subdural hematoma. The state's expert medical witness testified that Brittany's injuries were inconsistent with [Petitioner's] explanation of her injuries.

> The state, relying upon the excited utterance exception to the hearsay rule, called Shirley Bobo to testify to statements made by Stephanie. [Petitioner's] trial counsel objected to Bobo's testimony, arguing that Stephanie was not excited when she made the statements about which Bobo would testify. After conducting a voir dire of Bobo and finding that Stephanie's declarations met the requirements for excited utterances as set forth in State v. Wallace [, 37 Ohio St.3d 87, 524 N.E.2d 466 (Ohio 1988) ], the trial court overruled [Petitioner's] objection.

> Bobo testified that on January 29, 1992, Stephanie knocked on her door, crying and hysterical. Bobo unsuccessfully attempted to calm Stephanie. When Bobo asked Stephanie why she was so upset, Stephanie responded "He's gonna kill her." Bobo testified that Stephanie told her that [Petitioner] picked up Brittany by her face and slammed her against the wall.

> [Petitioner] presented a defense that Brittany's bruises resulted from some fights with his son, Justin, and by accidental falls. [Petitioner's] witnesses testified that he was a good father to Justin and that [Petitioner] had not harmed Justin. [Petitioner] called Stephanie as a witness, but the trial court sustained the state's objection, and Stephanie did

not testify. The jury convicted [Petitioner] on all counts of the indictment. (J.A. at 523–24.)

## DISCUSSION

### Standard of Review

In a habeas proceeding, this Court reviews the district court's legal conclusions *de novo* and its factual findings for clear error. *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir.2000). Because Petitioner filed his § 2254 petition in 1999, this Court reviews his case according to the standards set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). AEDPA provides federal habeas relief for a state prisoner if a state court's decision "resulted in or was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court's decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision of a state court "involves an unreasonable application of [Supreme Court] precedent" if: (1) "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;" or (2) "the state court decision either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. In determining whether the state court unreasonably applied Supreme Court precedent, this Court must limit its inquiry to "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

**A. WHETHER THE OHIO COURT OF APPEALS UNREASONABLY APPLIED *WHITE V. ILLINOIS*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) IN REJECTING PETITIONER'S CONFRONTATION CLAUSE CHALLENGE TO BOBO'S TESTIMONY ON THE GROUNDS THAT THE TESTIMONY WAS ADMITTED PURSUANT TO THE FIRMLY ROOTED HEARSAY EXCEPTION FOR SPONTANEOUS DECLARATION.**

Petitioner claims that the admission of Bobo's hearsay testimony violated his Sixth Amendment right to confront and cross-examine witnesses. Petitioner presents this claim largely in terms of Ohio law, arguing that the Ohio Court of Appeals lacked a reasonable basis in state law for distinguishing the circumstances of his case from those in *State v. Storch*, 66 Ohio St.3d 280, 612 N.E.2d 305 (1993). Had the appellate court properly applied *Storch*, Petitioner argues, the court would have required the trial court to make a determination of Stephanie's availability before allowing Bobo to testify. Petitioner also suggests that the Ohio courts failed to determine whether Stephanie, as the declarant, was competent to testify. According to Petitioner, resolution of his Confrontation Clause claim requires this Court's *de novo* review of Ohio's hearsay rules to

determine whether the Ohio appellate court properly found Bobo's testimony to concern a matter within the "excited utterance" exception under Ohio law. Petitioner further argues that this Court must undertake a *de novo* review of the evidentiary record to determine whether admission of the testimony violated the federal Confrontation Clause.

### 1. Extraneous Matters

■ Petitioner's assertions raise a number of matters that are erroneous or inappropriate for this Court's review. For example, in representing that this Court must undertake *de novo* review of the state factual record and the provisions of Ohio evidence law to resolve his Confrontation Clause claim, Petitioner misconceives this Court's post-AEDPA review. AEDPA bars this Court from granting relief pursuant to § 2254 unless the Ohio courts unreasonably applied, or issued a decision contrary to, controlling Supreme Court precedent on federal constitutional questions. *See* 28 U.S.C. § 2254(d)(1)-(4). Habeas review of a state court's decision is not *de novo*, even if the state court failed to articulate clear reasoning for its disposition of a federal constitutional claim. *See Onifer v. Tyszkiewicz*, 255 F.3d 313, 316 (6th Cir.2001); *Palazzolo v. Gorcyca*, 244 F.3d 512, 516 (6th Cir.2001). Absent a showing that the violation also contravenes federal law or principles of fundamental fairness, Petitioner's allegations that evidence was admitted in violation of Ohio constitutional or evidence law provides no basis for this Court's granting relief. *See Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

■ Petitioner failed to present a question regarding Stephanie's testimonial competency to any Ohio court. Even though the Ohio Court of Appeals noted in Petitioner's direct appeal that "the trial court never determined whether Stephanie was competent to testify" (J.A. at 262), Petitioner did not include a testimonial competency issue as a component of his arguments, constitutional or otherwise, to the Ohio courts. Petitioner has therefore not exhausted state remedies relative to the competency issue, and this Court may not grant habeas relief on the basis of unexhausted claims. *See* 28 U.S.C. § 2254(b)(2); *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

■ In addition, Petitioner raises the question of Stephanie's testimonial competency purely in terms of Ohio law. Specifically, Petitioner argues that, pursuant to *State v. Said*, 71 Ohio St.3d 473, 644 N.E.2d 337, 340 (1994), Ohio courts cannot permit hearsay statements without first determining whether the declarant was competent to testify. Although Petitioner suggests that the trial court's failure to inquire into Stephanie's competency before allowing Bobo's testimony contravenes Ohio law as articulated in *Said*, he does not describe any provision of federal law conditioning admission of spontaneous declarations on the competency of the declarant. At most, Petitioner advances an error of state law, which cannot give rise to habeas relief. *See Estelle*, 502 U.S. at 67–68; *see also Buell v. Mitchell*, 274 F.3d 337, 357 (6th Cir.2001) (finding that "habeas review does not ordinarily extend to state court rulings on the admissibility of evidence").

### 2. Confrontation Clause Claim—Procedure

■ Our inquiry then becomes whether the resolution of Petitioner's Confrontation Clause claim by the Ohio courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as deter-

mined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Respondent argues, however, that this Court cannot reach the Confrontation Clause claim on the merits because Petitioner failed to exhaust state remedies. Respondent contends that Petitioner failed to present the federal Confrontation Clause claim to the Ohio Supreme Court, and therefore cannot present it for review in a federal habeas action. Review of Petitioner's application to the Ohio Supreme Court states a single proposition of law: "The State of Ohio must comply with the Confrontation Clause of Section Ten, Article One of the Ohio Constitution and may not shift the burden of proof to the defense." (J.A. at 312.) Despite this apparently state law-focused statement of the issue presented for review, Petitioner argues that he explicitly presented a federal constitutional claim as well because the text of his memorandum in support of jurisdiction includes the following one-sentence paragraph:

> In addition to the fourth assignment of error discussed *supra*, defendant-appellant asserts that the eighth and ninth assignments of error prevented him from confronting witnesses against him.

(J.A. at 316.) Petitioner does not otherwise define the "fourth" and "ninth assignments of error" in his memorandum in support of jurisdiction (and, while he subsequently mentions the ninth assignment one additional time, does not mention the fourth assignment at any other time). Petitioner argues, however, that, by mentioning these "assignments of error," he referred the Ohio high court to his brief filed with the court of appeals. In that earlier brief, Petitioner stated the fourth assignment of error as follows:

FOURTH ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED IN ALLOWING STATE OF OHIO'S WITNESS, SHIRLEY BOBO, TO TESTI-

FY UNDER EXCITED UTTERANCE EXCEPTION TO HEARSAY RULE. IN VIOLATION OF THE CONFRONTATION CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTIONS.

(J.A. at 77.) Petitioner further explains that he included with his memorandum the appellate court's decision, which discussed federal constitutional issues, as well as copies of two Ohio cases, *Storch* and *State v. McWhite*, 91 Ohio App.3d 508, 632 N.E.2d 1320 (1993), both of which "prominently" involved federal constitutional claims. (Pet. Reply Br. at 3.) According to Petitioner, the references to the assignments of error and these other materials sufficiently apprised the Ohio Supreme Court of his interest in resolving federal constitutional claims and gave the Ohio court an opportunity to address them.

The doctrine of exhaustion "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Pursuant to the exhaustion doctrine, this Court lacks jurisdiction over a claim in a *habeas* petition that was not "fairly presented" to the state courts. *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir.2001) (citations and internal quotation marks omitted). A habeas petitioner can "fairly present" the substance of a federal constitutional claim to a state court in several ways: (1) citation to a provision of the Constitution; (2) citation of federal case law employing constitutional analysis; or (3) citation of state case law employing federal constitutional analysis according to similar facts. *Carter v. Bell*, 218 F.3d 581, 606–07 (6th Cir.2000) (citing *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir.1995); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.1993)); *see also McMeans v. Brigano*,

228 F.3d 674, 681 (6th Cir.2000) (identifying ways a petitioner can present federal claims: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law").

It initially appears that Petitioner failed to present a federal constitutional claim to the Ohio high court. For instance, Petitioner's memorandum in support of jurisdiction opens with the statement that the Ohio constitution provides greater protection than the Confrontation Clause of the Sixth Amendment. Even though Petitioner's memorandum directly invokes the Ohio constitution's confrontation clause only, Petitioner attached to his memorandum the decision of the court of appeals, which examined Petitioner's confrontation issue (the "fourth assignment of error") at least in part through federal constitutional analysis. (*See* J.A. at 263–64, 268–69.) Petitioner's memorandum also includes citations to the *Storch* and *McWhite* cases which involved comparisons of the confrontation requirements of the federal and Ohio constitutions in the context of hearsay exceptions, and specifically discussed the Supreme Court's opinion in *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). *See Storch*, 612 N.E.2d at 311–14; *McWhite*, 632 N.E.2d at 511–12. While the *Storch* and *McWhite* courts examined hearsay exceptions other than the spontaneous declaration exception, the Supreme Court's *White* decision remains the principal Confrontation Clause authority concerning spontaneous declarations. *See Lilly v. Virginia*, 527 U.S. 116, 124, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (describing *White* as the "most recent [Supreme Court] case interpreting

the Confrontation Clause"). Petitioner undoubtedly could have presented his Confrontation Clause claim in a more focused manner; however, his citation of Ohio cases examining the Sixth Amendment right to confrontation in the hearsay context satisfies this Circuit's definition of "fair presentation" in this case. *See McMeans*, 228 F.3d at 681; *Carter*, 218 F.3d at 607.

### 3. Confrontation Claim—Substance

■ The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. "If one were to read this language literally, it would require, on objection, the exclusion of any statement made by a declarant not present at trial." *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In *White*, the Court explained that such a literal reading is inappropriate:

> Thus courts have adopted the general rule prohibiting the receipt of hearsay evidence. But where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied.

*White*, 502 U.S. at 356. The Court recognized two exceptions to the hearsay rule as "firmly rooted": statements made for purposes of medical diagnosis or treatment, and spontaneous declarations or "excited utterances." *Id.* at 355 & n. 8. The Court provided a general description of the nature of a spontaneous declaration: "[a] statement that has been offered in a moment of excitement—without the opportunity to reflect on the consequences of one's exclamation." *Id.* at 356. The Court stated a similar characterization of the excep-

tion in *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990):

> The basis for the "excited utterance" exception, for example, is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous.

*Wright,* 497 U.S. at 820 (citations omitted).

Ohio's Evidence Rule 803(2) codifies the hearsay exception for spontaneous declarations:

> *Excited utterance.* A statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition.

Ohio's statement of the spontaneous declaration exception is identical to that contained in the Federal Rules of Evidence. *See* Fed.R.Evid. 803(2); *see also* Ohio Evid. R. 803(2), Staff Note ("This exception is identical to Federal Evidence Rule 803(2)."). On direct appeal, the Ohio Court of Appeals rejected Petitioner's claim that Bobo's statements did not qualify as "excited utterances." The court opined:

> Shirley Bobo testified at trial that on January 29, 1992, she heard someone banging on her door. When Bobo opened the door, she found Stephanie choking and sobbing. When Bobo asked Stephanie what was the matter, Stephanie said "He's going to kill her." After Bobo asked Stephanie who was going to kill who, Stephanie eventually indicated that [Petitioner] had picked up Brittany by the face and slammed her against the wall. Although Bobo tried to calm Stephanie by sitting her down, getting her something to drink, and putting a blanket around her, Stephanie remained hysterical while she told Bobo what had happened. We note that [Respondent] never subpoenaed Stephanie. We further note that the trial court never determined whether Stephanie was competent to testify.

> Appellant first argues that because Stephanie did not explain why she had come over to Bobo's home, until Stephanie calmed down and answered Bobo's questions, Stephanie's statements do not qualify as excited utterances. To be admissible as an excited utterance pursuant to Evid. R. 803(2), a declarant's statement must have been made before there was time for nervous excitement to lose domination over the declarant's reflective faculties. *State v. Wallace* (1988), 37 Ohio St.3d 87, 524 N.E.2d 466.

> We find that Bobo's testimony demonstrates that Stephanie was still in an excited state when she made the statements, even though she had sat down and had a few sips of the drink Bobo had given to her. We note that in *Wallace* the court held at paragraph two of the syllabus:

> > "The admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties.

> The record reveals that Bobo's questioning of Stephanie was neither coercive nor leading. Bobo was merely trying to understand who Stephanie was talking about when she said "He is going to kill her." Therefore, we find that the trial court did not err in holding that Bobo's testimony about Stephanie's statements

is admissible under the Evid. R. 803(2) excited utterance exception to the hearsay rule.

(J.A. at 262–63.)

Petitioner argues that the Ohio Court of Appeals erred and that admission of Bobo's testimony cannot satisfy the requirements of the firmly rooted hearsay exception for spontaneous declarations.[1] Petitioner contends that the record lacks evidence of when a startling event occurred to place Stephanie in an excited condition. For instance, Petitioner raises the possibility of a lapse of time between infliction of injury to Brittany and Stephanie's arriving at Bobo's nearby home. Petitioner also contends that Stephanie subsequently denied making the statements to Bobo and denied that the event—Petitioner's striking Brittany against a wall—ever occurred.

Petitioner's factual contentions arise largely out of the evidentiary hearing conducted during Petitioner's action for post-conviction relief. During this evidentiary hearing, the trial court and parties heard a recording of a February 18, 1992 interview with Stephanie conducted by Detective Nicholas Franklin of the Ross County Sheriff's Department, Sherry Childers of Ross County Children's Services, and Jacquelyn Johnson, a relative of Stephanie. Stephanie's statements during this interview, however, are far from unequivocal in terms of her denying making statements to Bobo.

The transcript of this interview was not before the trial court when it made its determination to admit Bobo's testimony pursuant to the exception for spontaneous declarations. Rather, in response to an objection from Petitioner's counsel regarding the admissibility of Bobo's testimony under the spontaneous declaration exception, the trial court permitted counsel to conduct a voir dire of Bobo outside the presence of the jury. According to Bobo's voir dire testimony, she encountered Stephanie outside her home on January 29, 1992 "trying to tear the door off the hinges." (J.A. at 606.) Bobo described Stephanie as "screaming and a hollering and crying and she was hysterical." "choking, sobbing ... really panicked," "waving her arms and just crying", and "just real tense and real excited. She wouldn't calm down. She was shaking." (J.A. at 606–09.) The crux of Bobo's testimony is as follows:

> She kept saying, "He's going to kill her. He's going to kill her. He's going to kill her." That's all she would say and I kept saying, "Who? Who? Who?" And she couldn't talk. So I went and got her a glass of Kool–Aid real quick. My ex-husband—well, Ron, was there at the time. Ron Bobo. He was there and he was trying to help me get her calmed down. He was getting a blanket and putting it around her because all she had on was a t-shirt and socks. So I went in to get her a glass of Kool–Aid and she took a couple drinks of that and she was still kind of gagging and choking and she was just real excitable and I said—she just kept saying, "Shirley, you've got to do something. He's going to kill her." And I kept saying, "Who? Who?" And she said, "Dwayne." And I said, "No, no, no, no. Who? Who are you talking about? Your mom?" And I said, "Your mom can take care of herself. You don't have to worry about her." And Stephanie said, "No, no. Brittany, Brittany." I said, "Well, what

---

1. Petitioner also argues that the appellate court contravened Ohio law as stated in *Storch* by admitting the hearsay testimony without first finding that Stephanie was unavailable. As stated in the opening of this discussion, this question of Ohio law is wholly outside the scope of this Court's Confrontation Clause inquiry.

do you mean?" And that's when she told me that—something about that he had picked her up by the face and that he had hit her up against the wall and that he was being mean to her and just all kinds of stuff she was coming off with. I really can't recall everything she said. Just certain things stick out in my mind.

(J.A. at 608–09.)

The evidence before the Ross County trial court supports the applicability of the exception. As Petitioner points out, Bobo's voir dire testimony does not specifically indicate the length of time between the injury to Brittany and Stephanie's arrival at Bobo's home. The concern for timing appears to derive from the interest in avoiding fabricated or coached statements, and allowing statements that are free from the declarant's opportunity to reflect before speaking. *See White*, 502 U.S. at 356; *Wright*, 497 U.S. at 820. The Ohio appellate court viewed Stephanie as "still in an excited state when she made the statements," and we agree. Bobo's voir dire description of Stephanie's frantic condition outside and inside her home suggests her recent encounter with a disturbing event, and Bobo explained that while Stephanie was not fully coherent for a few moments following her arrival, Stephanie repeatedly stated, "He's going to kill her." (J.A. at 608.) By depicting Stephanie's continuing emotional reaction, Bobo's voir dire testimony provides sufficient indicia of lack of Stephanie's opportunity to reflect on her statements.

Petitioner also challenges the applicability of the spontaneous declaration exception on grounds that the record lacks independent evidence of a startling event warranting Stephanie's statements. For example, Petitioner notes that Bobo did not offer testimony about seeing injuries to Brittany around the time of Stephanie's visit, and

Brittany's death did not occur until approximately two weeks after Stephanie visited Bobo's home. We are not persuaded by Petitioner's argument inasmuch as the hearsay statement itself satisfies the startling event requirement. *See* 2 JOHN W. STRONG ET AL., MCCORMICK ON EVIDENCE § 272, at 206 (5th ed. 1999) ("Under generally prevailing practice, the statement itself is considered sufficient proof of the exciting event, and therefore the statement is admissible despite absence of other proof that an exciting event occurred."); *see also United States v. Brown*, 254 F.3d 454, 459–60 (3d Cir.2001) ("In light of the volume and persuasiveness of the authority bearing on the question, we conclude that an excited utterance may itself be sufficient to establish that a startling event occurred.").

In summary, having examined Stephanie's statements as related by Bobo, the Ohio courts did not unreasonably apply *White* in concluding that the statements fell within a firmly rooted hearsay exception and their admission satisfied the Confrontation Clause.

**B. WHETHER THE COURT OF APPEALS OF OHIO ISSUED A DECISION CONTRARY TO *TAYLOR V. ILLINOIS* AND THEREFORE CONTRAVENED PETITIONER'S RIGHT TO PRESENT A DEFENSE BY EXCLUDING THE TESTIMONY OF STEPHANIE RAPP AS A SANCTION FOR FAILING TO NAME HER AS A WITNESS PRIOR TO TRIAL.**

Petitioner claims that the trial court's decision barring him from calling Stephanie as rebuttal witness denied his right to present a defense pursuant to the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. The Su-

preme Court has derived this right from the Compulsory Process Clause of the Sixth Amendment. The Compulsory Process Clause provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. In *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Supreme Court construed this clause broadly:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington,* 388 U.S. at 19.

### 1. Right to Present a Defense Claim—Procedure

■ Respondent argues that whether Petitioner's claim is described as a violation of due process or the right to present a defense, Petitioner failed to exhaust state remedies with regard to this claim and therefore the claim cannot serve as a basis for federal habeas relief. Petitioner contends that he fairly presented the federal constitutional claim to the state court of appeals and supreme court. Petitioner highlights his reference to his "ninth assignment of error" in his memorandum in support of jurisdiction to the Supreme Court of Ohio.

Although Petitioner describes his ninth assignment solely in confrontation terms, rather than in terms of due process or the right to present a defense, he does make

reference to *Lakewood v. Papadelis,* 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987). In *Lakewood,* the Ohio Supreme Court considered the impact of excluding defense witnesses as an Ohio Crim. R. 16(E) discovery sanction. In reversing the sanction, the *Lakewood* court specifically described the effect of the sanction on the defendant's Sixth Amendment right to present a defense, specifically citing *Washington. See Lakewood,* 511 N.E.2d at 1141. Because Petitioner's memorandum cites a state case which based its rejection of the sanction in part on analysis of the federal Constitution, Petitioner presented his right to present a defense claim to the Ohio courts and exhausted his state remedies. *See Carter,* 218 F.3d at 607.

### 2. Right to Present a Defense—Substance

■ Petitioner's claim of a denial of the right to present a defense arises out of his inability to present Stephanie's testimony. The trial court prohibited Petitioner from offering Stephanie's testimony in rebuttal to Bobo's testimony as a sanction for Petitioner's trial counsel's failure to list Stephanie as a witness in reciprocal discovery pursuant to Ohio Criminal Rule 16(E).

The Supreme Court considered an analogous sanction in *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). The *Taylor* Court recognized the constitutional significance of a defendant's presenting exculpatory evidence, but also acknowledged the states' interests in conducting orderly criminal trials and creating enforceable rules for identifying and presenting evidence. *Taylor,* 484 U.S. at 410–11. While the Court refused to "draft a comprehensive set of standards to guide the exercise" of a trial court's discretion to sanction a party for failure to comply with discovery rules, the Court identified a number of considerations germane to whether a sanction passed constitutional muster. *Id.* at 414–15. These consider-

ations include the defendant's right to present favorable evidence, the integrity of the adversarial system, the interest in administering justice fairly and efficiently, potential prejudice to the truth-seeking role of criminal trials, the reasons for failure to comply with discovery rules, and the relative ease of compliance with the rules. *Id.* at 414–16.

Subsequent to *Taylor*, the Supreme Court clarified that preclusion of witnesses or evidence for every violation of a discovery rule was not required. *Michigan v. Lucas*, 500 U.S. 145, 152, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991). "Rather, we acknowledged that alternative sanctions would be 'adequate and appropriate in most cases.'" *Id.* (quoting *Taylor*, 484 U.S. at 413). The *Lucas* Court pointed out *Taylor*'s recognition of "circumstances in which preclusion was justified because a less severe penalty 'would perpetuate rather than limit the prejudice to the State and the harm to the adversary process.'" *Id.* (quoting *Taylor*, 484 U.S. at 413). The circumstances of *Taylor* permitted a harsh sanction because the defense wilfully failed to comply with discovery rules in order to gain strategic advantage over the prosecution. *See id.* (discussing *Taylor*, 484 U.S. at 417).

In finding that excluding Stephanie's testimony was warranted here, the Ohio Court of Appeals reasoned:

> We are not unmindful of the possible importance of Stephanie's testimony in this case. Shirley Bobo's testimony concerning Stephanie's excited utterance was the only direct evidence concerning appellant's alleged abuse of Brittany. However, it is precisely this importance of Stephanie's testimony that makes appellant's failure to comply with Crim. R. 16 so problematic. Appellee may have presented a very different case if it had known Stephanie would be called to testify. Simply granting appellee a continuance to prepare for Stephanie's testimony would not have necessarily allowed appellee to repair the possible damage that the surprise would have caused to its case. The jury had already heard appellee's case. If appellee had been forced to recall witnesses to rebut Stephanie's testimony, appellee might have suffered prejudice because the jury might have believed that appellee had been attempting to hide the additional facts or that appellee had been forced to change its version of what happened in the case. Also, if the trial court had granted appellee a continuance, the longer the continuance, the fresher appellant's case would have been in the jury's mind than appellee's case.

(J.A. at 280.) According to the Ohio appellate court, the trial court had not abused its sanctioning discretion because "[n]one of the other sanctions available would have done much to minimize the prejudice caused by appellant's noncompliance with the discovery rules."

The court's decision was not contrary to *Taylor*. As Petitioner has pointed out consistently in the various proceedings leading up to this appeal and as the state appellate court recognized in its decision, Bobo's testimony provided the only direct evidence of Petitioner's abuse of Brittany, proof of which was necessary for Petitioner's involuntary manslaughter conviction. Evidence refuting Bobo's testimony or bringing it into question was, therefore, highly important for Petitioner's defense. At the same time, the thrust of the *Taylor* decision is that the right to present the testimony of defense witnesses is not absolute, and must be balanced against "countervailing public interests." *Taylor*, 484 U.S. at 414. The appellate court focused primarily on the prejudice to the prosecution of bringing in an eleventh-hour rebuttal witness, and this focus inherently factors in matters such as the integrity of the

adversarial process and the truth-seeking nature of criminal trials.

If the appellate court did not take into account the full range of factors suggested by *Taylor*, the points raised by the district court below demonstrate that consideration of other factors would lead to the same result. Specifically, the utility—if not necessity—of Stephanie's testimony would have become obvious at least upon identification of Bobo as a prosecution witness. Further, because Bobo apparently provided similar testimony in the earlier conviction of Karen Rapp on charges identical to those Petitioner faced, this case does not present the situation in which the importance of challenging her testimony only become significant *after* Bobo testified. Counsel could easily have included Stephanie's name in its pretrial witness list, but simply did not do so.

In summary, the Ohio Court of Appeals did not reach a decision contrary to the Supreme Court's decision in *Taylor* when it affirmed the exclusion of Stephanie's testimony as a discovery sanction inasmuch as the state court's application of Rule 16(E) reflects the consideration of facts and interests consistent within *Taylor*.

C. **WHETHER THE COURT OF APPEALS OF OHIO UNREASONABLY APPLIED *STRICKLAND V. WASHINGTON* IN REJECTING PETITIONER'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL ARISING OUT OF COUNSEL'S FAILURE TO CHALLENGE BOBO'S TESTIMONY ON GROUNDS OF DECLARANT AVAILABILITY UNDER OHIO LAW AND FAILURE TO INCLUDE STEPHANIE RAPP AS A WITNESS.**

Petitioner describes four ways in which his trial counsel was ineffective: (1) failure to raise an objection to Bobo's offering hearsay testimony on grounds of Stephanie's testimonial availability, pursuant to *State v. Storch*, 66 Ohio St.3d 280, 612 N.E.2d 305 (1993); (2) failure to raise an objection to Bobo's offering hearsay testimony on grounds of Stephanie's testimonial competence; (3) failure to include Stephanie as a witness in pretrial discovery; and (4) failure to argue that he could call Stephanie as a witness pursuant to Ohio Evidence Rule 806(D) for cross-examination even though she was not listed as a witness before trial. As a threshold matter, the ineffective assistance theories regarding Stephanie's testimonial competence and Rule 806(D) are not properly before this Court. Petitioner not only failed to present them to the state courts, but also failed to present those theories to the district court.

Pursuant to *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a claim of constitutionally ineffective assistance of counsel comprises two elements: (1) the attorney's performance was deficient, falling below an objective standard of reasonableness; and (2) the attorney's deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. In determining whether an attorney performed in an objectively unreasonable manner, courts employ "highly deferential" scrutiny. *Id.* at 689. To satisfy the prejudice requirement, an ineffective assistance claimant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

1. **Stephanie's Availability & *State v. Storch***

Petitioner claims that his counsel was deficient for failing to oppose Bobo's

testimony on grounds that the trial court had not determined Stephanie's unavailability to testify. This argument stems from the decision of the Supreme Court of Ohio in *Storch*. In general, the *Storch* court compared the confrontation requirements of the Sixth Amendment with those of Section 10, Article I of the Ohio Constitution. In response to the Supreme Court's holding in *White*, that admission of hearsay pursuant to a firmly rooted exception satisfied the Sixth Amendment's Confrontation Clause, the *Storch* court held that "the admission may violate our state constitutional right of confrontation." *Storch*, 612 N.E.2d at 314. The court "construe[d] the right of confrontation contained in Section 10, Article I to require live testimony where reasonably possible." *Id.* at 315.

The more specific question before the *Storch* court was the confrontation concern raised by admission of hearsay statements of children in abuse cases, particularly after adoption of a state evidentiary rule 807, prescribing particular requirements for admitting hearsay statements of a child victim in a sexual or physical abuse case. According to Rule 807, before a trial court may admit a hearsay statement of a child victim in an abuse case, the trial court must find: (1) the circumstances surrounding the statement provide trustworthiness guarantees comparable to statements admitted pursuant to other hearsay exceptions; (2) the child's testimony "is not reasonably obtainable" by the proponent of the hearsay, effectively a finding of unavailability; (3) independent evidence of the abuse; (4) that the proponent of the statement notified other parties about the content and circumstances of the statement. Ohio Evid. R. 807(A)-(B). The *Storch* court concluded that the requirements of Rule 807 comported with the federal and Ohio rights of confrontation. *Storch*, 612 N.E.2d at 315.

In Petitioner's direct appeal, he challenged the trial court's admission of Bobo's testimony without making a prior determination of Stephanie's availability to testify as a violation of *Storch*. The court of appeals stated six reasons for rejecting Petitioner's challenge under *Storch*, summarized that it saw "no reason to treat the child declarant's statements in this case any differently than we would have treated her statements had she been an adult," and rejected Petitioner's claim that his conviction was invalid under *Storch*. (J.A. at 272.)

When Petitioner subsequently raised counsel's failure to challenge admission of the hearsay statements without first establishing Stephanie's unavailability as ineffective assistance, the court of appeals concluded that its earlier disposition of the *Storch* issue controlled and required a finding of no prejudice under the second prong of *Strickland*. The appellate court explained:

> [Petitioner] argues that he was prejudiced by his counsel's failure to object to Bobo's testimony. In [Petitioner's] first appeal we decided that Petitioner was not prejudiced by the trial court['s] allowing the state to call Bobo to testify without establishing Stephanie's availability. Thus, whether [Petitioner] was prejudiced by the failure to establish Stephanie's presence was actually and directly at issue in the previous action and was passed upon and decided by this court. Even if [Petitioner's] trial counsel was deficient for failing to object to Bobo's testimony because Stephanie was available to testify, we have found that [Petitioner] was not prejudiced and he is estopped from relitigating the prejudice issue in this post-conviction proceeding.

(J.A. at 534.)

The court of appeals did not unreasonably apply *Strickland* in so holding. Al-

though Petitioner argues that trial counsel was deficient in failing to raise a *Storch* availability objection to Bobo's testimony, we find Petitioner's reliance on *Storch* in this regard misplaced inasmuch as *Storch* construed Ohio Evidence Rule 807, which was not a basis for admitting Bobo's testimony in the instant case. Petitioner notes that in *State v. McWhite*, 91 Ohio App.3d 508, 632 N.E.2d 1320 (1993), the court of appeals extended the *Storch* availability criterion beyond Rule 807. However, the court in *McWhite* extended *Storch* with significant reservations, and did so with respect to a different hearsay exception than that which permitted admission of Bobo's testimony. *See id.* at 513, 612 N.E.2d 305. Because the applicability of *Storch* to spontaneous declarations is not clear, it cannot be found that Petitioner's trial counsel provided constitutionally deficient representation for lacking knowledge about *Storch* or failing to oppose Bobo's testimony on grounds of *Storch. Cf. Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) ("Not just any deficiency will do, however; the assistance must have been so ineffective as to violate the Federal Constitution."). For similar reasons, the Ohio Court of Appeals did not unreasonably apply *Strickland* in rejecting Petitioner's *Storch*-based ineffective assistance claim for lack of prejudice.

## 2. Inclusion of Stephanie as a Witness

▮ Petitioner also claims that his trial counsel provided deficient representation and prejudiced his right to a fair trial by failing to include nine-year-old Stephanie's name in reciprocal discovery. According to Petitioner, when testifying at the postconviction hearing, trial counsel admitted that this failure was attorney error and not a reasoned trial tactic. In fundamental contrast to Petitioner's argument, the court of appeals rejected the ineffective

assistance claim arising out of the witness list under the cause prong of *Strickland*. The appellate court explained:

Here, [Petitioner's] trial counsel testified that he obtained a transcript of the interview with Stephanie several months prior to [Petitioner's] trial. After reviewing its contents, [Petitioner's] trial counsel decided that the cross-examining of Stephanie by the state would be detrimental to [Petitioner's] defense. Our review of the transcript showed that Stephanie responded inconsistently to questions regarding whether she went to Bobo's house and made the excited utterance, whether she feared [Petitioner], and whether he hit her, Brittany, and her mother. [Petitioner's] trial counsel's decision not to list and call Stephanie as a witness can be considered sound trial strategy in light of her age and her tendency to contradict herself. Therefore, we find that [Petitioner] failed to show facts to overcome the presumption that his trial counsel provided him with reasonable professional assistance.

(J.A. at 533.)

Petitioner suggests that the Ohio Court of Appeals "conjure[d] up a speculative reason" for counsel's not including Stephanie as a witness. However, the record indicates that on several occasions counsel described his reasoning for not including Stephanie as a witness. For example, counsel explained:

I did ... attempt to ... try to determine whether or not I could keep [Bobo's testimony] out. I made a decision ... as a trial attorney, not to, attempt to call Stephanie Rapp as the declarant, uh, due to her age of eight years and ...due to the fact that I had to call her, I'd have to call your [sic] on direct, which would enable the prosecutor, who was a very able trial attorney, to take her on cross-examination, and

... being a former school principal in Upper Arlington ... I ... know that young children can be led to say things that aren't necessarily what they appear to be.

(J.A. at 695.) At another point, when the prosecutor asked, "You realized that you were taking a chance putting Stephanie on the stand in the trial, if you were to do so, didn't you[?]," trial counsel responded:

I not only realized it. I felt that it ...could be extremely ... detrimental ... to my client, to ... take her on direct examination and allow [the prosecuting attorney] to have her on cross. Uh, again ... an eight year old, even though she seemed to be very bright, ... could ... in my opinion very easily been led to say things that weren't necessarily true.

(J.A. at 710.) Immediately following this statement, the prosecutor directed trial counsel's attention to the portion of the trial transcript covering counsel's attempt to offer Stephanie's testimony in rebuttal. At that time, trial counsel noted to the court, "I mean, the truth should come out and we're taking as much chance putting that witness on as certainly they're taking on not putting her on." (J.A. at 660.) Trial counsel responded to this statement during the post-conviction relief hearing as follows:

That's what I said, however, I believe after reading that, that I wouldn't necessarily be taking the same chance, because, again, uh, and I, I think somewhere in there I indicated that I did not want to take her on direct, and I felt it was the State's responsibility, especially in light of the fact, that she was making a statement inconsistent with what Shirley Bobo had said, that they had the duty to take her on direct, and allow me to cross examine her. As a sound trial strategy. Uh, I felt that it was, ex-

tremely detrimental to my client to have to put her on—put an eight year old on, on direct and allow [the prosecuting attorney] to cross examine her.

(J.A. at 711.) In short, Petitioner's trial counsel recognized the potential detriment to his case in offering Stephanie as a witness, particularly when the prosecution would have the opportunity to cross-examine her. As a result, we conclude that the state court did not unreasonably apply *Strickland* in concluding that trial counsel's decision not to include Stephanie as a witness was based on sound trial strategy and therefore not constitutionally deficient. In addition, although not addressed by the state court, Petitioner's arguments fail to establish prejudice on this record.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court denying Petitioner's application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.

BATCHELDER, Circuit Judge, concurring.

I write separately only because I would hold that petitioner failed to exhaust his state remedies with regard to his claim that he was denied his Sixth Amendment right to present his defense when the trial court refused to permit him to call Stephanie as a rebuttal witness. I am aware of no authority that supports the holding of the lead opinion that citation to one state supreme court case (for a proposition of state law) which refers to a United States Supreme Court case that discusses the applicable point of federal law "fairly present[s]" the issue to the state courts. *Carter v. Bell*, 218 F.3d 581, 607 (6th Cir.2000).

Accordingly, I would not reach the issue and concur in the result.